UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

MARIA C. WALTHERR-WILLARD      CASE NO. **1:12 C V 476**
27 Damon Road
Cincinnati, Ohio 45218,      JUDGE:

     WEBER, J.

     Plaintiff,

     v.

MARIEMONT CITY SCHOOLS /
MARIEMONT CITY SCHOOL DISTRICT
BOARD OF EDUCATION
2 Warrior Way
Cincinnati, Ohio 45227,

**Serve: Mr. Paul W. Imhoff, Superintendent**
     **2 Warrior Way**
     **Cincinnati, Ohio 45227,**

     Defendant.

---

## VERIFIED COMPLAINT
## AND JURY DEMAND

Comes now Plaintiff, Maria C. Waltherr-Willard (hereinafter "Plaintiff"), by and through

counsel, and for her Verified Complaint against the Defendant, Mariemont City Schools /

Mariemont City School District Board of Education (hereinafter "Defendant"), states as follows:

1

## BACKGROUND

1. This is a civil rights and breach of contract action alleging that Defendant discriminated against Plaintiff on the basis of Plaintiff's disability, sex and age, when she was forced to endure a hostile work environment based on sex and age discrimination, thereby causing her damages. Plaintiff also seeks all remedies available under law including, but not limited to, past and future pay, compensatory damages, punitive damages, and reasonable attorneys fees.

2. This action arises under The Americans With Disabilities Act of 1990 as Amended, 42 U.S.C. Chapter 126, §1201 et. seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3, the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq., O.R.C. §4112, and the common law of Ohio regarding unlawful discrimination in employment, breach of contract and promissory estoppel.

## PARTIES

3. At all times relevant herein, Plaintiff was domiciled in, and a resident of, Hamilton County, Ohio.

4. Defendant is a corporation or other entity organized and existing under the laws of the State of Ohio, whose office is located at 2 Warrior Way, Village of Mariemont, Hamilton County, Ohio.

5. Defendant is engaged in the business of providing public education services for grades kindergarten through the 12th grade for a defined geographical area, all of which is located in Hamilton County, Ohio.

## JURISDICTION AND VENUE

6. A substantial portion of the events relevant and comprising the subject matter of this Complaint occurred in Hamilton County, Ohio.

7. This Court has personal jurisdiction over the Defendant because Plaintiff was employed by Defendant in Mariemont, Hamilton County, Ohio.

8. The Court has subject matter jurisdiction because the Complaint arises out of allegations based on the Americans With Disabilities Act of 1990 as Amended, 42 U.S.C. Chapter 126, §1201 et. seq. (hereinafter "ADA"), Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII") and the Age Discrimination in Employment Act (hereinafter "ADEA"). Original jurisdiction is appropriate pursuant to 28 U.S.C. §1331.

9. This Court may assume supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. §1367, because the facts that give rise to the state claims derive from the same nucleus of operative facts as the federal claims.

10. Venue is appropriate in the Southern District of Ohio, Western Division, pursuant to 28 U.S.C. §1391(B), because a substantial portion of the facts and circumstances leading to this action arose within Hamilton County, Ohio.

## ADMINISTRATIVE HISTORY

11. On July 25, 2011, Plaintiff timely filed a charge of discrimination, Charge No. 473 2011 01155 with the Equal Employment Opportunity Commission (hereinafter "EEOC"), alleging violations of the ADA, Title VII and the ADEA. A copy of this charge with personal information redacted is attached hereto as Exhibit "A".

12. The EEOC issued a Right to Suit letter/Dismissal and Notice of Rights date March 29, 2012. A copy of this letter with personal information redacted is attached hereto as Exhibit "B".

13. All conditions precedent to the initiation of this lawsuit have been fulfilled.

GENERAL ALLEGATIONS

14. Plaintiff readopts and realleges all previous allegations of Plaintiff's Complaint as if fully set out herein.

15. Plaintiff, a female, was born in Havana, Cuba on May 28 1951 and lived in that country until such time when she immigrated to the United States in 1969 at the age of 18, later becoming a naturalized citizen of the United States of America.

16. Plaintiff is a native speaker of Spanish and French. She is also fluent in English and Italian, and has studied German and Japanese.

17. Plaintiff graduated from Fairfield Senior High School in June, 1970 and then received her Bachelor of Arts degree from Miami University in June, 1974. Plaintiff then received her Master of Arts degree from Miami University in June, 1976. The Bachelor's degrees were in Spanish and French and the Master's degree in Spanish with high concentration in French.

18. Plaintiff was employed by Defendant beginning in 1976, after teaching Spanish for one and a half years as an adjunct Professor at Miami University. Plaintiff continued in her role as an adjunct Professor at Miami for a period of time after becoming a part of Mariemont's faculty.

19. Plaintiff taught Spanish and French continuously for Defendant for a total of 35 years, from 1976 to her retirement in 2011, 34 years of which were at the high-school level. Plaintiff also taught advanced placement Spanish and French until 1997 at Mariemont.

20. During her extensive teaching career, Plaintiff consistently received excellent reviews from Defendant and performed at a consistently high level. Plaintiff loved teaching and was much beloved by her students and their parents.

4

21. During the time of her employment, Plaintiff was diagnosed with several medical conditions, including: Specific Phobia, General Anxiety Disorder, history of hypertension, GERD and allergies. Plaintiff's specific Anxiety disorder is, essentially, that she has severe anxiety around young children. Plaintiff has no children of her own, limited experience dealing with them, has never been certified to be an elementary school teacher, and has never taught in an elementary school. Plaintiff does not have these anxiety issues with high-school-age children, thus the reason that Plaintiff has always sought to teach at the high-school level.

22. Plaintiff had treated for anxiety since approximately 1991, and was able to function effectively, despite life stressors including the declining health of her mother and decisions revolving around having to place her mother in a nursing facility.

23. Since the beginning of her employment with Defendant, Plaintiff had been teaching for Defendant at the high-school level only, except for a short period of time when she taught some junior-high classes when the junior-high school was co-located with the high school, and the more advanced junior-high students mixed with the high-school students. In 1997, Plaintiff was told by Defendant that she was going to have to teach entire classes of students who were younger than high-school age, including elementary-school students at Terrace Park Elementary.

24. The prospect of teaching these younger students caused extreme anxiety for Plaintiff, causing her blood pressure to spike and causing gastro-intestinal symptoms.

25. Plaintiff, at that time, retained legal counsel, Alphonse Gerhardstein, Esq., who advocated on behalf of his client, and communicated with Defendant regarding Plaintiff's serious health issues revolving around her anxiety disorder.

26. Medical professionals on behalf of both Plaintiff and Defendant examined Plaintiff, and confirmed these diagnoses and conditions. At this time, Plaintiff and Defendant agreed that

Plaintiff 's various medical and mental conditions constituted a classified disability pursuant to the ADA. Copies of Mr. Gerhardstein's correspondence with Defendant are attached to the charge of discrimination, Exhibit "A" hereto. Additional relevant correspondence is attached to the charge as well, including Plaintiff's correspondence to Defendant requesting transfer back to high school, which reiterated her health concerns, and Defendant's written denial.

27. Because of factors including Plaintiff's disability, Defendant made a reasonable accommodation in the conditions of Plaintiff's employment by agreeing with Plaintiff that Plaintiff would only teach at the high-school level, so as to avoid contact with younger children. This accommodation and agreement with Plaintiff and Defendant constituted a legal contract, and altered the terms of employment.

28. Plaintiff taught both Spanish and French until 2010, when Defendant made the decision to eliminate the French program entirely.

29. Prior to and during 2009, Plaintiff was asked by various parents about the French program. Plaintiff honestly and frankly informed these inquiring parents the truth that the French program was going to be eliminated, which displeased Defendant, who apparently did not want parents to know about this, presumably to avoid losing potential students.

30. Plaintiff was called into a closed door meeting on or around December 18, 2009 at which time Dr. Renner, Principal at Mariemont High School and Mr. Imhoff, Superintendant, gave Plaintiff harsh criticism, severely belittling and dressing her down, and yelling at her which conduct was so severe that Plaintiff was left sobbing and unable to function for the remainder of the day due to her elevated state of stress. Plaintiff was admonished that her job was at risk if she refused to downplay the elimination of the French program and Plaintiff was essentially told to mislead parents who inquired about the French program. Mr. Imhoff expressly told Plaintiff

that "if you have talked to a parent rest assured that I will know it and you will then receive a memo reprimanding you that will be placed on your record and will stay there forever." This resulted in a hostile and uncomfortable work situation and environment for Plaintiff, causing her much distress.

31. In 2009, Plaintiff was transferred to Mariemont Junior High to start up the middle-school Spanish program. One Spanish teacher remained at the high-school level, who was younger and had less experience than Plaintiff. Later on, another Spanish teacher was hired at the high-school level. Plaintiff was able to establish a successful middle-school program. However, working with these younger students adversely affected Plaintiff's health, due to her disability.

32. Plaintiff was unable to control her blood pressure which was so high at times that it posed a stroke risk. This was of such concern that the middle-school nurse monitored Plaintiff's blood pressure weekly, and Plaintiff discussed her blood pressure problems and concerns with the middle-school Principal under whom she was working, Mr. Keith Koehne.

33. After Plaintiff and her physicians determined that Plaintiff was going to be unable to continue working at the middle-school level, due to her disability and the related health risks, Plaintiff requested to be transferred back to high school for the 2010-2011 school year.

34. Plaintiff's request for transfer was denied, even though Plaintiff had always taught at the high-school level throughout her career. Plaintiff was told that a position for her was not available. A copy of Plaintiff's request for transfer letter as hand-delivered to Superintendent Imhoff with a copy to her Principal Mr. Koehne is attached to Plaintiff's charge of discrimination, Exhibit "A," along with a copy of Defendant's denial of the request. Plaintiff's former position at the high-school level had been filled and Plaintiff was replaced by a worker

who was not a native Spanish speaker, and less qualified. A younger, less experienced Spanish teacher was permitted to remain at the high school, filling the other Spanish position.

35. Plaintiff was forced to retire in March of 2011, because of her health.

36. Plaintiff, at the time of her separation of employment from Defendant in 2011, was 59 years old. At all times relevant to this action, Plaintiff was over the age of 40 years.

37. As a result of Defendant's actions, Plaintiff suffered severe injury including, but not limited to: mental and physical stress, anxiety, anguish, emotional distress, loss of enjoyment of life and other non-pecuniary losses; lost wages, past and future, lost and diminished retirement benefits, and other future economic damages.

38. The actions and inactions of Defendant resulted in discrimination against Plaintiff on the basis of: her disability/medical condition(s) in violation of the ADA; age in violation of Title VII and the ADEA. The employment policies and practices of Defendant, by and through its agents, discriminated against Plaintiff in ways that jeopardized her job and deprived her of her equal employment opportunities. Defendant's actions and inactions created a hostile work environment resulting in discrimination against Plaintiff on the basis of age in violation of the ADEA. Additionally, Defendant's actions constitute a breach of employment contract, promissory estoppel and discharge in violation of public policy, all damaging Plaintiff.

## COUNT I: AMERICANS WITH DISABILITIES ACT VIOLATIONS

39. Plaintiff re-adopts and re-alleges paragraphs 1-38 and all previous paragraphs of Plaintiff's complaint as if fully set out herein .

40. Plaintiff's diagnosed medical conditions including Specific Phobia, General Anxiety Disorder, history of hypertension, GERD and allergies, as previously mentioned, constitute a disability.

8

41. Plaintiff is otherwise qualified for her position as a Spanish teacher, with or without reasonable accommodation.

42. Plaintiff suffered an adverse employment decision, and Defendant knew or had reason to know of Plaintiff's Disability and Plaintiff was replaced, causing damages to Plaintiff, as pled herein.

## COUNT II: AGE DISCRIMINATION

43. Plaintiff re-adopts and re-alleges paragraphs 1-38 and all previous paragraphs of Plaintiff's complaint as if fully set out herein.

44. Defendant's treatment of Plaintiff and conduct towards Plaintiff constitutes unlawful discrimination on the basis of age in violation of 29 U.S.C. Section 623(a) *et. seq.* of the ADEA. Plaintiff was a member of a protected age class, was qualified for her job (and indeed excelled at it, receiving for several years promotions and raises, and exceeding her goals and expectations set by Defendant).

45. Plaintiff was constructively discharged by Defendant, and replaced by a worker who was less qualified and not a native speaker of Spanish. Defendant's actions were a direct and intentional attempt to force Plaintiff from her position of employment.

46. In addition to the financial damages of loss of wages in the past, Plaintiff's future earnings and benefits have been adversely affected, resulting in future wage loss.

47. Plaintiff has also incurred non-pecuniary damages resulting from Defendant's actions, including emotional, mental and physical ailments

## COUNT III: HOSTILE WORK ENVIRONMENT

48. Plaintiff re-adopts and re-alleges paragraphs 1-38 and all previous paragraphs of Plaintiff's complaint as if fully set out herein.

9

49. Plaintiff's disability, age and sex qualified her as a member of a protected class under the policy against age and sex discrimination as defined by Title VII and the ADEA.

50. The unwelcome actions and conduct of Defendant, by and through its agents and employees, including Mr. Paul W. Imhoff, Superintendent, created a hostile work environment for Plaintiff, a member of a protected class.

51. The actions and conduct of Defendant, by and through its agents and employees, resulted in a work environment that was intimidating, hostile, abusive and/or offensive for Plaintiff.

52. This hostile work environment became so severe that it negatively affected Plaintiff's mental and physical well-being.

53. Defendant's actions and violations, by and through its employees and agents, resulted in a change of Plaintiff's work environment.  Defendant's actions were a direct and intentional attempt to create a hostile work environment to injure and harass Plaintiff and to force Plaintiff from her position of employment as retaliation for Plaintiff informing concerned parents about the elimination of the French program.

54. Based upon the liability theory of *Respondeat Superior*, at all material times relevant herein, the employees and agents of Defendant supervised and had authority over Plaintiff, relative to Plaintiff's employment with Defendant.

55. Defendant knew or should have known of the intentional and malicious conduct on the part of its employees and agents toward Plaintiff.

56. Defendant knew or should have known of the negligent conduct on the part of its employees and agents, towards Plaintiff.

10

## COUNT IV:  EMOTIONAL DISTRESS

57. Plaintiff re-adopts and re-alleges paragraphs 1-38 and all previous paragraphs of Plaintiff's complaint as if fully set out herein .

58. Defendant, by and through its agents and employees, including Mr. Paul W. Imhoff, intended to cause emotional distress to Plaintiff, or by its carelessness or recklessness, knew or should have known that the actions of its agents and employees would result in serious emotional distress to Plaintiff.

59. Defendant's conduct, by and through its agents and employees, was the direct and proximate cause of Plaintiff's mental and emotional injury.  Plaintiff's mental and emotional injury also resulted in physical symptoms and manifestations of stress and anxiety.

60. The mental anguish suffered by the Plaintiff is serious and of a nature that no reasonable person could be expected to endure the same.

## COUNT V:  PROMISSORY ESTOPPEL

61. Plaintiff re-adopts and re-alleges paragraphs 1-38 and all previous paragraphs of Plaintiff's complaint as if fully set out herein .

62. The correspondence from 1997 and other representations by Defendant to Plaintiff and related conduct constitute a contract and establish an exception to the employment-at-will doctrine, and, in the alternative, created an employment agreement and established an exception to the employment-at-will doctrine, that should have been reasonably expected by Defendant to be relied upon by Plaintiff, and which Plaintiff reasonably relied upon and conducted herself in accordance therewith and relied upon the same to her detriment.  Constructive discharge of Plaintiff under the circumstances was in violation of this agreement.

63. Plaintiff has been damaged as a direct and proximate result of Defendant's breach.

## COUNT VI:  DISCHARGE IN VIOLATION OF PUBLIC POLICY

64. Plaintiff re-adopts and re-alleges paragraphs 1-38 and all previous paragraphs of Plaintiff's complaint as if fully set out herein.

65. Defendant engaged in the discharge of Plaintiff with full knowledge of Plaintiff's disability, to avoid paying higher wages to Plaintiff versus a less qualified replacement worker, and as retaliation for telling the truth about the French program to parents who were concerned about their children's educations and future.

66. Discharging Plaintiff under the circumstances was done for reasons including, but not limited to:  as retaliation; as a pretextual attempt by Defendant to avoid paying Plaintiff's salary; and in discrimination against Plaintiff for her disability.

67. Plaintiff has been damaged as a direct and proximate result of Defendant's actions.

68. A clear public policy exists sufficient to justify an exception to employment-at-will in the instant circumstances as manifested by law, and dismissal of employees under the circumstances as in Plaintiff's case jeopardizes this public policy.

69. Defendant's actions were motivated by conduct related to this public policy, and Defendant lacked any overriding legitimate business justification for the dismissal of Plaintiff under these circumstances.

70. Defendant's actions in discharging Plaintiff violated public policy, and were not only negligent but willful, malicious and intentional, and accordingly, subject Defendant to additional damages, including punitive damages.

## COUNT VII:  BREACH OF CONTRACT

71. Plaintiff re-adopts and re-alleges paragraphs 1-38 and all previous paragraphs of Plaintiff's complaint as if fully set out herein .

12

72. The 1997 correspondence, representations and actions of the parties constitute an agreement between Plaintiff and Defendant, that Plaintiff would not teach below the high-school level, creating a legal and binding contract.

73. Defendant breached this contract by conduct including, but not limited to, forcing Plaintiff to work at the middle-school level, refusing to return Plaintiff to the high-school level and constructively discharging Plaintiff.

74. Plaintiff has been damaged as a direct and proximate result of Defendant's breach(es).

## PRAYER FOR RELIEF

WHEREFORE Plaintiff demands judgment against Defendant, for:

1. All compensatory damages for current and future economic injury suffered by Plaintiff in an amount in excess of the Jurisdictional requirement of this Court, to be proven at trial;

2. All compensatory damages for non-economic injuries suffered by Plaintiff including, but not limited to, emotional distress, in an amount to be proven at trial;

3. Punitive damages in an amount to be determined at trial;

4. Plaintiff's costs herein and reasonable attorney's fees;

5. Trial by jury; and

6. All other relief to which Plaintiff may be entitled.

Bradford C. Weber (0068724)
BENJAMIN, YOCUM & HEATHER, LLC
300 Pike Street, Suite 500
Cincinnati, OH 45202
Telephone: (513) 721-5672
Facsimile: (513) 562-4388
E-mail: bcweber@byhlaw.com
ATTORNEY FOR PLAINTIFF,
MARIA C. WALTHERR-WILLARD

13

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues herein.

_____

Bradford C. Weber

## **VERIFICATION**

STATE OF OHIO            )
                         ) SS:
COUNTY OF HAMILTON  )

I, Maria C. Waltherr-Willard, verify that I have read the foregoing Complaint and it is true and accurate to the best of my knowledge and belief.

_Maria C. Waltherr-Willard_

Maria C. Waltherr-Willard

Subscribed and sworn to me, a Notary Public, by Maria C. Waltherr-Willard on this 21st day of June, 2012.

BRADFORD CHARLES WEBER
Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration
Section 147.03 R.C.

Notary Public

15