UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


MARIA C. WALTHERR-WILLARD

           Plaintiff


       v.                                      Case No.  1:12-cv-476-HJW

MARIEMONT CITY
SCHOOL/MARIEMONT CITY SCHOOL
DISTRICT BOARD OF EDUCATION

           Defendant


<u>ORDER</u>


      Pending is the "Motion to Dismiss" (doc. no. 4) by the defendant Mariemont

City School District Board of Education ("Board of Education"). Plaintiff opposes

the motion. Having fully considered the record, including the pleadings and the

parties' briefs, the Court will <u>grant</u> the motion for the following reasons:

<u>I.  Background and Factual Allegations</u>

      In her complaint, plaintiff (female, age 59) indicates that she was born in

Cuba and immigrated to the United States in 1969 when she was 18 years of age

(¶ 15). She is a native speaker of Spanish and French (¶ 16). After completing her

education, she began working for the Mariemont City School in 1976 and taught

Spanish and French language classes at the high school level continuously for

the next 35 years. She also taught some classes with junior high students. She

indicates that she loved teaching and consistently had good to outstanding performance reviews. In 1997, she alleges that she was assigned to teach classes of students "who were younger than high-school age, including elementary school students" (¶ 23) and that the prospect of teaching younger students "caused extreme anxiety for plaintiff" (¶ 24).

Plaintiff alleges that at some unspecified time during her employment, she was diagnosed with several medical conditions, including: Specific Phobia, General Anxiety Disorder, history of hypertension, GERD and allergies (¶ 21). She alleges that "she has severe anxiety around young children . . . [but] does not have these anxiety issues with high-school age children" (¶ 21). Plaintiff's legal counsel contacted the school in May of 1997, and according to plaintiff, the parties thereafter agreed that plaintiff's "various medical and mental conditions constituted a classified disability pursuant to the ADA" (¶ 26; doc. no. 1-1 at 9, "Letter"). She alleges that the school then accommodated her by agreeing that plaintiff would only teach at the high school level (¶ 27). Plaintiff continued to teach Spanish and French for the next decade (¶ 28).

In 2009, plaintiff advised some of her students' parents that the school was planning to eliminate the French program (¶ 29). She alleges that in a subsequent meeting on December 18, 2009, the school principal (Dr. Renner) and superintendant (Mr. Paul W. Imhoff) harshly criticized her, warned plaintiff that her job was at risk, and told plaintiff that, if she talked to parents about the possible elimination of the French program again, she would "receive a memo" that would remain in her personnel file. Plaintiff alleges this caused her "much

distress" and resulted in "a hostile and uncomfortable work situation" for her (¶ 30). That year, plaintiff was transferred to Mariemont Junior High to "start up the middle school Spanish program" with seventh and eighth grade students (¶ 31). She claims she successfully implemented the program, but alleges that "working with these younger students adversely affected [her] health, due to her disability" (¶ 31). She attributed her high blood pressure to working at the middle school (¶ 32). The Mariemont City School's French program was entirely eliminated in 2010 (¶ 28).

On January 26, 2011, plaintiff asked to be transferred back to the high school for the 2011-2012 school year (¶ 33; Ex. A, ¶ 12). She complained to Superintendant Imhoff that she "would be underutilized, if [she] were to remain teaching at the 7th and 8th grade level" and that her "continued presence at the Junior High level . . . would be a waste of a valuable resource [meaning plaintiff herself]" (doc. no. 1-1 at 14). Her request was denied (¶ 34) for the stated reason that there were currently "no openings" at the high school for the next school year (doc. no. 1-1 at 13). Plaintiff contends she was "forced to retire in March of 2011, because of her health" (¶¶ 35-36). She was age 59 when she retired on March 31, 2011 (doc. no. 1-1 at 1).

On or about July 28, 2011, plaintiff filed a charge against the "Mariemont City Schools" with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of age and disability (doc. no. 1-1 at 18). She also alleged she had been subjected to "retaliation" for informing the parents about the elimination of the French program at the school. Plaintiff did not

mention sex discrimination in her intake questionnaire, nor did she mention sex discrimination in her charge or in the supporting narrative written by her counsel. The EEOC issued a "Dismissal and Notice of Suit Rights" on March 29, 2012. Plaintiff attaches both documents to her complaint and refers to them in her complaint (¶¶ 11-12; Exs. A, B).

On June 22, 2012, plaintiff filed a seven-count federal complaint against the Mariemont City School and the Mariemont City School District Board of Education, alleging federal discrimination claims (Counts I through III) and various state law claims (Counts IV through VI).[1] Her complaint alleges that the "defendant discriminated against plaintiff on the basis of plaintiff's disability, sex, and age" (doc. no. 1 at 2, ¶ 1). Her complaint also asserts claims under Ohio law for "emotional distress," promissory estoppel, discharge in violation of public policy, and breach of implied contract.

The defendant Board of Education filed a partial motion to dismiss pursuant to Rule 12(b)(6), asserting that Counts V, VI and VII fail to state any claims for relief as a matter of Ohio law. Plaintiff responded (doc. no. 8), and the defendant replied (doc. no. 9). This matter is fully briefed and ripe for consideration.

## II.  Standard of Review

Motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim for which relief may be granted test the sufficiency of a complaint, and the first step

---

[1] Although plaintiff names two defendants, she refers throughout her complaint to them collectively as "the defendant."

is to identify any conclusory allegations. <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1950 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Id</u>. at 1949 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 550 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. Although the court must accept well pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555.

In considering a Rule 12(b)(6) motion, a court must focus on whether the plaintiff is entitled to offer evidence to support her claims, rather than whether she will ultimately prevail. <u>Id</u>. A complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." <u>Ferron v. Zoomego, Inc</u>., 276 Fed.Appx. 473 (6th Cir. 2008) (quoting <u>Lewis v. ACB Business Serv., Inc</u>., 135 F.3d 389, 406 (6th Cir. 1998)). Although courts generally do not consider matters outside the pleadings when reviewing a complaint for legal sufficiency, a court may consider exhibits attached to the pleadings, if the documents are referenced in the complaint and are central to the plaintiff's claims. <u>Nixon v. Wilmington Trust Co</u>., 543 F.3d 354, 357 (6th Cir. 2008). Courts may take judicial notice of orders issued by administrative agencies, such as the EEOC. <u>Toth v. Grand Truck R.R</u>., 306 F.3d 335, 348 (6th Cir. 2002).

## III.  Discussion

### A. Whether Counts V (promissory estoppel) and VII (implied contract) state claims for relief under Ohio law

In Count V, plaintiff asserts a claim for promissory estoppel. She points to "the correspondence from 1997 and other representations . . . and related conduct," which according to plaintiff, "constitute a contract and establish an exception to the employment at will doctrine" (doc. no. 1 at ¶ 62). She alleges that "constructive discharge of plaintiff under the circumstances was in violation of this agreement" (Id.).

The equitable doctrine of promissory estoppel is an alternative theory of recovery for a breach of contract claim. Although plaintiff urges that she can plead this claim "in the alternative," it is generally agreed that there can not be an express agreement and an implied contract for the same thing existing at the same time." Hughes v. Oberholtzer, 162 Ohio St. 330, 335, 123 N.E.2d 393 (Ohio 1954). In other words, promissory estoppel is not available as a remedy where the legal relationship between the parties is governed by a valid and enforceable contract, such as public school teachers' contracts. Gibson Real Estate Mgt., Ltd. v. Ohio Dept. of Admin., 2006 WL 322304 (Ohio Ct.Cl.); Harwood v. Avaya Corp., 2007 WL 1574116, *10 (S.D.Ohio 2007) (J. Sargus) (holding that because an enforceable contract governed relations between the parties, plaintiffs' equitable claim for promissory estoppel was barred).  In Ohio, public school teachers are employed pursuant to express written contracts. See Ohio R.C. § 3319.08(A) ("The board of education of each city, exempted village, local, and joint

vocational school district and the governing board of each educational service center shall enter into written contracts for the employment and reemployment of all teachers).

Moreover, the defendant Board of Education points out that it is well-settled under Ohio law that "the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function." Ohio State Bd. of Pharmacy v. Frantz, 51 Ohio St.3d 143, 145–146 (1990); Hortman v. Miamisburg, 110 Ohio St.3d 194, 199-200 (2006) (holding that promissory estoppel is inapplicable against a political subdivision when the political subdivision is engaged in a governmental function); Inwood Village, Ltd. v. Cincinnati, 2011 WL 6826414, *2 (Ohio App. 1st Dist) (same). Ohio law specifically provides that school boards (and school districts) are political subdivisions. Ohio R.C. § 2744.01(F). The operation of public schools, including the employment of teachers in those schools, is a governmental function. Ohio R.C. § 2744.01(C)(2)(c); Bucey v. Carlisle, 2010 WL 2018376, ¶ 19 (Ohio App. 1st Dist.) (observing that Ohio law defines the "provision of a system of public education as a governmental function, and holding that this includes "the staffing of a public school"). Plaintiff cites no binding authority to the contrary.

Similarly, plaintiff attempts to assert a separate claim for breach of implied contract in Count VII, based on "the 1997 correspondence, representations, and actions of the parties." According to plaintiff, these "constitute an agreement between the plaintiff and defendant, that plaintiff would not teach below the high school level, creating a legal and binding contract" (¶ 72). Plaintiff's contention

lacks merit. "In Ohio, political subdivisions cannot be bound by contract unless the agreement is in writing and formally ratified through proper channels. As a result, political subdivisions cannot be made liable upon theories of implied or quasi contract. Schmitt, 970 N.E.2d at 1192 (holding that claim of implied contract of employment was subject to dismissal); Wright v. Dayton, 158 Ohio App.3d 152, 158-159 (2d Dist. 2004) (under Ohio law, "only express agreements adopted by the City in accordance with law may be enforced"); Franks v. Bolivar, 2011 WL 5838209, *5 (N.D.Ohio) (dismissing breach of implied contract claim). "It is generally agreed that there can not be an express agreement and an implied contract for the same thing existing at the same time." Warren v. Trotwood-Madison City School Dist. Bd. of Educ., 1999 WL 148233 at *7-8 (Ohio Ct. App. 1999) (quoting Hughes v. Oberholtzer, 123 N.E.2d 393 (Ohio 1954)). Because plaintiff was a teacher subject to an express written contract governing the terms of her employment, she cannot assert a claim under a theory of implied contract. Yates v. Scioto Cty. Bd. of Mental Retardation and Developmental Disabilities, 2006 WL 1582446 (S.D.Ohio 2006).

Defendant aptly observes that plaintiff has not pointed to any binding authority suggesting that she is bringing these claims under a viable theory or recovery. Plaintiff merely responds in general fashion that under Fed.R.Civ.P.8(a)(3), a party may "plead alternatively" and that this includes both non-equitable and equitable claims. Plaintiff also suggests that the Board's motion to dismiss is "premature" because "no facts have been established by stipulation or discovery" (doc. no. 8 at 2). Plaintiff appears to confuse the

requirements of Rules 12(b)(6) and 56(c). At this stage of the proceedings, plaintiff need only allege (not prove) non-conclusory facts, which when taken as true, sufficiently state a plausible claim for relief under some viable theory of recovery.

Defendant points out that under the facts alleged, plaintiff is not asserting any viable theory of recovery in Counts V through VII. Defendant observes that "alleging a cause of action that is legally invalid is not pleading in the alternative, it is pleading in the impossible" because "Ohio law simply does not permit the claims asserted in Counts V, VI and VII of the Complaint" (doc. no. 9). Defendant is correct. See, e.g., <u>Schmitt v. Educational Serv. Ctr. of Cuyahoga Cty.</u>, 970 N.E.2d 1187, 1193 (Ohio App. 8 Dist. 2012). (holding that the plaintiff's Ohio claims of promissory estoppel and implied contract were barred as a matter of law and that the trial court should have dismissed them). Counts V and VII are subject to dismissal.

## B. Whether Count VI (discharge in violation of Ohio public policy) fails to state a claim for relief

The same reasoning applies to Count VI, where plaintiff alleges that she was constructively "discharged" in violation of Ohio public policy.[2] Defendant correctly asserts that "even if plaintiff had been discharged, rather than voluntarily retired, Ohio law limits public policy tort claims to 'at-will' employees who have no contractual or statutory rights to their employment" (doc. no. 4 at 2-3). See <u>Haynes v. Zoological Soc. of Cincinnati</u>, 73 Ohio St.3d 254, 257-58 (1995)

---

[2] Elsewhere in her complaint, plaintiff alleges she was "forced to retire" because of her health (¶ 35).

(under Ohio law, a claim for discharge in violation of public policy is available only to at-will employees); Brown v. Columbus Bd. of Educ., 638 F. Supp.2d 856, 869 (S.D. Ohio 2009) ("discharge in violation of public policy is available only to at-will employees, which Plaintiff is not"); George v. Fairfield Metropolitan Housing Authority, 2008 WL 3008663 (S.D.Ohio) (same).

Plaintiff does not allege she was an employee at will. As already discussed, Ohio public school teachers are not "at-will" employees as a matter of law; they are employed pursuant to express written contracts and have various statutory protections against termination without cause. See Ohio R.C. § 3319.08(A) ("The board of education of each city, exempted village, local, and joint vocational school district and the governing board of each educational service center shall enter into written contracts for the employment and reemployment of all teachers."); Ohio R.C. § 3319.16 ("The contract of any teacher employed by the board of education of any city, exempted village, local, county, or joint vocational school district may not be terminated except for good and just cause."). As explained by the court in Warren v. Trotwood-Madison City School Dist. Bd. of Educ., 1999 WL 148233  (Ohio App. 2d  1999):

> "Public school teachers and administrators are inherently different from "at-will" employees because their employment is governed by statute and by written contracts. Additionally, they are accorded protections employees and other situations do not have, like the right to contracts of a certain length and automatic re-employment in some situations."

Id. at 18-19. Defendant points out that because plaintiff was tenured and entitled to a continuing contract under Ohio R.C. § 3319.08(D), her employment would

have continued if she had not retired. **Because plaintiff was not an at-will employee, this claim is subject to dismissal.**

**IV. Conclusion**

Even when all of plaintiff's non-conclusory factual allegations are taken as true for purposes of Rule 12(b)(6), and giving plaintiff the benefit of all reasonable inferences, Counts V, VI, and VII of the complaint do not state viable claims under Ohio law.

Accordingly, the defendant's "Motion to Dismiss" (doc. no. 4) is <u>GRANTED</u>; Counts V, VI, and VII are <u>DISMISSED</u> with prejudice.

IT IS SO ORDERED.

<u>    s/Herman J. Weber      </u>

Herman J. Weber, Senior Judge

United States District Court