**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

**MARIA C. WALTHERR-WILLARD**

           **Plaintiff**

   **v.**                                 **Case No.  1:12-cv-476-HJW**

**MARIEMONT CITY SCHOOL/
MARIEMONT CITY SCHOOL
DISTRICT BOARD OF EDUCATION**

           **Defendants**

## ORDER

      Pending is the defendants' "Motion for Summary Judgment" (doc. no. 29), which plaintiff opposes. The defendants (hereinafter collectively referred to as "Mariemont") have submitted proposed findings of fact and conclusions of law, which plaintiff has highlighted as true, false, or irrelevant.[1] Having fully considered the record, including the parties' briefs, exhibits, proposed findings, and applicable authority, the Court will <u>grant</u> the motion for the following reasons:

## I.  Background and Procedural History

      The relevant facts are largely undisputed and will be summarized as succinctly as possible. Disputed facts or characterizations will be noted herein.[2]

---

[1] The Court's "Scheduling Order" (doc. no. 6) requires the proponent of a dispositive motion to provide proposed findings. The opposing party must then file its high-lighted version. Plaintiff did so on January 6, 2014 (doc. no. 47).

[2] The only facts "disputed" by plaintiff are portions of ¶¶ 8-9, 18-20.

Plaintiff Maria Waltherr-Willard ("Willard") was a tenured teacher who taught in the Mariemont City School District from 1976 to 2011 (doc. no. 47, ¶ 1). She taught language classes that included students from grades 7 through 12 for nearly a decade (1986 to 1995) (¶ 7). She indicates she enjoyed teaching and got favorable performance reviews. After the school district built a separate junior high school, the seventh and eighth graders attended that school. In 1997, the school district asked plaintiff to teach an enrichment class to elementary school children in grades 4-6 for 45 minutes daily.

Through counsel, plaintiff submitted a one-page letter (dated March 17, 1997) from her psychologist Gail Friedman to then-Superintendent Gerry Harris regarding plaintiff's anxiety at teaching this class (doc. no. 34-1 at 41). Based on such letter, plaintiff's counsel asked for the "accommodation" that plaintiff not have to teach the enrichment class at the elementary school (Id. at 42). Mariemont did not require plaintiff to teach the class (Willard Dep. at 62 Q: You didn't have to teach that enrichment program, correct? A: Correct.).[3]

For the next decade, plaintiff continued to teach French classes and the beginning Spanish class ("Spanish I") at the high school (¶¶ 1, 4). Carolina Timmerding ("Timmerding") taught the upper level Spanish classes. In light of declining enrollment in French, Superintendent Paul Imhoff ("Imhoff") and others decided to phase out classroom teaching of French at the high school and transition it to an online program (¶ 3). Plaintiff acknowledges that enrollment in

---

[3] Although plaintiff attempts to characterize this as an "agreement" that she would not teach outside the high school, the decision was merely that plaintiff would not have to teach an enrichment class to 4-6th graders.

French classes had been dropping for several years (Willard Dep. at 54). Despite the reduction in the French program, Mariemont did not terminate plaintiff's employment. Imhoff indicates that he discussed with High School Principal James Renner ("Renner") the possibility of transferring plaintiff to the Junior High to teach Spanish (Imhoff Dep. at 41). Renner accurately indicated that years ago plaintiff had said she had a phobia of young children (Id. at 42). Imhoff checked plaintiff's personnel file and ascertained that the prior incident concerned children in grades 4-6 (Id. at 46-48). As Imhoff explained at deposition, "I wasn't transferring her to be with younger kids, I was going to keep her with teenagers and she had had past experience at the junior high" (Id. at 48).

Superintendent Imhoff advised plaintiff in February 2009 that she would be transferred to the Junior High School to continue teaching Spanish I classes during the 2010-2011 school year (¶ 3). This would not affect her tenured status, salary, or benefits, and she would continue to be employed as a full-time language teacher (¶ 4). In a letter to Imhoff dated February 11, 2009, plaintiff summarized her understanding of these plans, including her teaching of 7th and 8th graders at the Junior High (doc. no. 34-1 at 55). She did not mention any concerns about her ability to teach junior high students, nor did she request any accommodation for any anxiety or other alleged disability (Id.).

Subsequently, Imhoff learned from parents that plaintiff was incorrectly advising them that the French program was being entirely eliminated and that students would be unable to continue their French studies (¶¶ 10-12). Imhoff met with Principal Renner and plaintiff on December 18, 2009 in Renner's office to

discuss this matter. Plaintiff denied giving misinformation to parents (¶ 13). She was not formally reprimanded (¶ 15).[4] Plaintiff had no questions, and the meeting adjourned. Imhoff had no further conversation with plaintiff (¶ 14).

During the 2009/2010 school year, plaintiff taught French II, III, and IV, and Spanish I at the high school (French I was not offered). In spring semester of 2010, she corresponded various times by email with Junior High Principal Keith Koehne ("Koehne") about the curriculum for the Spanish I class she would be teaching in the upcoming school year. In response, he explained that the 8th grade class would be the "equivalent of Spanish I – as it is currently taught at the 9th grade level" (doc. no. 34-1 at 70, email January 4, 2010, noting that "the schedule for next year has not been finalized"). In April 2010, he advised plaintiff that "in 8th grade, the same materials as are used for Spanish I in 9th grade would be used" and that plaintiff would be teaching 3 sections of Spanish I for 8th grade and a single quarter of "Intro Spanish" for 7th grade (doc. no. 34-2 at 12, email April 10, 2010).

In her numerous emails with Koehne, plaintiff never expressed any concern about teaching junior high students, never indicated that she suffered from any sort of disability, and never requested any sort of accommodation (¶ 17). In fact, she told Koehne "I am willing to work within whatever parameters are ultimately set out for the 7th and 8th grade Spanish classes" (doc. no. 34-2 at 1-3). She even emphasized to Koehne that her "enthusiasm" for teaching Spanish to junior high

_____

[4] Although plaintiff contends that Imhoff "yelled" at her, Imhoff and Renner testified that Imhoff remained seated and did not yell or raise his voice (¶¶ 11-12). Plaintiff admits Imhoff did not touch her (Willard Dep. at 83).

students should not be questioned. She then taught at the Junior High for the 2010-2011 school year. She does not recall having any disagreements with Koehne while he supervised her (¶¶ 6-7). For example, upon being advised that plaintiff was on medication for high blood pressure, he allowed the school nurse take her blood pressure (¶ 27). Plaintiff did not ask Koehne or anyone else at Mariemont for any medical or disability leave during the 2009-2010 and 2010-2011 school years (¶ 29).

Meanwhile, Mariemont hired David Price ("Price") on a part-time basis to teach the one or two periods of Spanish I previously taught by plaintiff at the high school (¶ 8).[5] No one was hired to teach live French classes, which had been phased out. By plaintiff's own account, her beginning Spanish classes at the Junior High School were successful and had good results.

After teaching the fall semester 2010 at the junior high, plaintiff sent a three-page letter on January 26, 2011, to Superintendent Imhoff, with a copy to Principal Koehne, requesting to "be transferred back to the Senior High School as a Spanish Teacher in the next school year (2011-2012)" (¶¶ 16, 18; doc. no. 34-2 at 37-39). Plaintiff acknowledges that she was not asking for an immediate (i.e., mid-year) transfer (¶ 18; Willard Dep. at 60, Q: "You weren't asking for an

---

[5] Although plaintiff "disputes" Mariemont's assertion that "there were no full-time Spanish instructor positions open at the high school during that school year" (¶ 8), Renner testified that the *only* open position in 2009-2010 at the high school was the *part-time* position to teach Spanish I (Renner Dep. at 76). It is undisputed that Price was hired for that position. To the extent plaintiff "disputes" that Renner *needed* to fill this position, she fails to explain why she thinks the school should have left such classes without a teacher. Renner explained that "I knew that it was likely that I would have to find someone to pick up one or two periods of Spanish here at the high school" (Id. at 28-29).

immediate transfer to the high school, correct? A: Correct.; and at 60, Q: You asked [to transfer] for the next year? A: Yes, sir.). In her letter, plaintiff indicated that she had initiated a successful Junior High Spanish program and that "Mr. Koehne has given me his full support." She further indicated:

> "I would be underutilized, if I were to remain teaching at the 7th and 8th grade level. When one considers the fact that I am making over $80,000.00 a year, it would appear that my continued presence at the Junior High level (with the Junior High program solidly in place) would be a waste of a valuable resource that could be better utilized effectively if I taught at the High School level next year. On a more personal level, continued permanent placement at the Junior High teaching 7th and 8th grade Spanish will have further detrimental impact on my health" (doc. no. 34-2 at 38).

Although she referred to her "health," plaintiff did not mention any specific concerns about teaching junior high students, did not mention any alleged disability, and did not mention any need for any "accommodation."

Superintendent Imhoff responded by email that "I am very pleased that your year at Mariemont Junior High School has gone so well, and I agree with your kind words regarding the leadership and support of Keith Koehne" (doc. no. 34-2 at 40). He further advised that "[t]here are currently no openings at Mariemont High School for the next year, but I will keep your request on file" (¶ 19). He testified it was too early in the year to look at staffing for the next school year (¶ 19). Plaintiff acknowledges that, in her experience, transfers or new positions became open in spring or summer (¶ 20).

Plaintiff did not wait to see if another position became available, and on March 4, 2011, announced her retirement, effective March 31, 2011 (¶ 20). Plaintiff

(age 59) had accrued 35 years of service, which entitled her to an annual retirement benefit of $73,000.00 for life (Willard Dep. at 122, Q: You retired with 35 years in STRS [State Teachers' Retirement System], correct? A: Yes, I did). Although plaintiff had a history of hypertension and indicates she did not finish the rest of the 2011 spring semester "under the advice of her doctor," she did not take medical retirement (¶¶ 20-21; Willard Dep. at 121, Q: You didn't take medical retirement, did you? A: No, I did not.). Given that plaintiff retired in mid-semester, Mariemont had to hire a substitute teacher to cover her classes for the rest of the 2011 spring semester (¶ 30). The temporary substitute teacher (Jennifer Mott) did not return the next year, and Mariemont hired David Price on a full-time basis to replace plaintiff and teach Spanish at the junior high for the 2011-2012 school year. At the end of that school year, Price resigned. Mariemont hired Kelly Anders to replace Price for the 2012-2013 school year (Imhoff Dep. at 74-75).

On June 22, 2012, plaintiff filed a federal complaint, alleging discrimination based on disability and age, "hostile work environment" with respect to "disability, age, and sex," intentional infliction of emotional distress, promissory estoppel, discharge in violation of public policy, and breach of contract. The latter three claims were dismissed (doc. no. 10, Order). After discovery, Mariemont filed for summary judgment on the remaining claims. This matter is fully briefed and ripe for consideration.

## II. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The moving party bears the burden of proving that no genuine dispute of material fact exists. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 586 (l986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. <u>Id</u>. at 587. In doing so, courts must distinguish between evidence of disputed material facts and mere "disputed matters of professional judgment," i.e. disagreement as to legal implications of those facts. <u>Beard v. Banks</u>, 548 U.S. 521, 529 30 (2006).

On summary judgment review, the court must determine whether the evidence presents a sufficient dispute of material fact so as to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986). A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." <u>Id</u>. at 248. A mere scintilla of evidence in support of a party's claim is insufficient to survive summary judgment, as there must be enough evidence that a jury could reasonably find for the party. <u>Id</u>. at 251. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

### III. Discussion

#### A.  Gender Discrimination

Title VII of the Civil Rights Act of 1964 ("Title VII") provides in relevant part that an employer may not "discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e 2(a)(1). Although plaintiff alleges in her complaint that her "sex qualified her as a member of a protected class under the policy against . . . sex discrimination as defined by Title VII" (doc. 1, ¶ 49), she indicates in her response that "a formal cause of action for gender discrimination was not alleged against the Defendant" (doc. no. 38 at 17). The Court will accept plaintiff's representation that she is not pursuing a gender discrimination claim.

Moreover, the record reflects that plaintiff cannot bring such claim here. When she filed her EEOC charge, she checked "age" and "disability," but did not check "sex" as a basis for alleged discrimination (doc. no. 1, Ex. B). Her narrative (prepared by counsel) did not mention gender discrimination and would not have prompted the EEOC to investigate such uncharged claim. As defendants correctly point out (doc. no. 29 at 17), "a Title VII plaintiff cannot bring claims in a lawsuit that were not included in the EEOC charge." Kuhn v. Washtenaw Cty., 709 F.3d 612, 627 (6th Cir. 2013) (quoting Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 361 (6th Cir. 2010)). Thus, plaintiff cannot assert a Title VII claim based on gender. Plaintiff appropriately concedes this (doc. no. 38 at 1, opposing summary judgment "except as to gender discrimination").

## B. ADA Disability Discrimination

The Americans with Disabilities Act of 1990 ("ADA"), as amended, prohibits discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The ADA defines "discrimination" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." Id. at § 12112(b)(5)(A). A "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . and other similar accommodations for individuals with disabilities." Id. at § 12111(9).

Although the parties argue under the prima facie case for indirect evidence, the plaintiff's failure-to-accommodate claim is more properly analyzed as involving direct evidence. Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 868 (6th Cir. 2007) ("claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence"). Plaintiff must establish that she is disabled as defined in the ADA. Id. 869. Plaintiff also "bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." Id. at 870. Defendant then bears the burden of showing that the accommodation would be an undue hardship. Johnson v. Cleveland City School Dist., 344 Fed.Appx. 104, 111 (6th Cir. 2009). For an accommodation to be reasonable, it must be necessary in light of the plaintiff's known limitations. Id. (citing Nance v. Goodyear Tire & Rubber Co., 527 F.3d 539, 557 (6th Cir. 2008)). The ADA does not require an employer "to create new jobs [or] displace existing

employees from their positions . . . in order to accommodate a disabled individual." <u>Kleiber</u>, 485 F.3d at 869.

The record reflects that Mariemont was aware that plaintiff had alleged in 1997 that she had disabling anxiety about teaching an enrichment class for grades 4-6 at the elementary school. Mariemont had granted her request for accommodation and did not require her to teach that class. Superintendent Imhoff appropriately reviewed the 1997 records before transferring plaintiff to the junior high for the 2010-2011 school year. On their face, those records did not preclude plaintiff from teaching junior high students (i.e. grades 7-8).

Even assuming that plaintiff's alleged anxiety amounted to a disability for purposes of the ADA, this claim fails because there is no evidence that plaintiff requested an accommodation, much less a reasonable accommodation, in 2010-2011. A plaintiff must propose an accommodation and show that it is objectively reasonable. <u>Kleiber</u>, 485 F.3d at 870-71; <u>Melange v. City of Center Line</u>, 482 Fed.Appx. 81 (6th Cir. 2012) ("the employee bears the burden of requesting a reasonable accommodation"); <u>Johnson</u>, 443 Fed.Appx. at 983. Plaintiff never asserted that she could not teach junior high students or needed any accommodation to do so. See, e.g., <u>Obnamia v. Shinseki</u>, 2013 WL 5408267, *3 (S.D.Ohio) (plaintiff must request an accommodation and provide either actual or constructive notice that the request is linked to a disability); <u>Johnson v. JPMorgan Chase & Co.</u>, 922 F.Supp.2d 658, 667 (S.D.Ohio 2013) (the employee's request needs "to make it clear from the context that it is being made in order to

conform with existing medical restrictions") (quoting <u>Leeds v. Potter</u>, 249 Fed. Appx. 442, 449 (6th Cir. 2007)). Plaintiff's transfer request did not do this.

Although plaintiff complains that Mariemont did not immediately grant her request to transfer back to the high school as a full-time Spanish teacher, plaintiff did not indicate she was requesting such transfer as an accommodation for her previously-asserted anxiety in 1997, which pertained to children in grades 4 to 6. Plaintiff acknowledges that her doctor's letter does not attribute her high blood pressure to teaching 7th and 8th graders (Willard Dep. at 124).

Superintendent Imhoff accurately advised her that there were currently no vacant positions at the high school for a Spanish teacher, but that he would keep her request on file. Mariemont had no obligation to create a new position to accommodate plaintiff. <u>Kleiber</u>, 485 F.3d at 869. To the extent that plaintiff suggests she might have taken Ms. Timmerding's job at the high school, Mariemont had no obligation to displace another employee. <u>Id</u>. By definition, a "reasonable accommodation" may include "reassignment to a *<u>vacant</u>* position" 42 U.S.C. § 12111(9) (emphasis added). Summary judgment is proper where a plaintiff fails to show that a requested accommodation is reasonable. <u>Cassidy v. Detroit Edison Co</u>., 138 F.3d 629, 635 (6th Cir.1998).

Although plaintiff complains that she saw a position at the high school advertised "sometime in the 2009-2010 school year" that she supposedly could have filled, her suggestion is based on a misapprehension of the facts. Principal Renner explained at deposition that, in light of plaintiff's transfer to the junior

high, he had to find "someone to pick up one or two periods of Spanish here at the high school" (Renner Dep. at 28-29). It is undisputed that David Price was hired on a part-time basis to cover those classes.

Plaintiff taught the fall 2010 semester at the junior high and did not request any "accommodation," much less a reasonable one. With respect to her transfer request in January 2011, she did not indicate that any alleged disability was the basis for such request. She merely tried to persuade the superintendent that it was a better use of her skills for her to teach at the high school. "It is not the prerogative of the courts to engage in the post hoc management of the employer's internal affairs by second guessing how personnel could have been more equitably allotted, or cost savings better realized." Norbuta v. Loctite Corp., 1 Fed.Appx. 305, 314-15 (6th Cir. 2001); Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 462 (6th Cir. 2004) ("As we have oft times repeated, it is inappropriate for the judiciary to substitute its judgment for that of management.").

When requesting an accommodation, a plaintiff must indicate that the basis for the request is a disability. Brown v. BKW Drywall Supply, Inc., 305 F.Supp.2d 814, 828 (S.D.Ohio 2004). Where the requested accommodation is a job transfer, the plaintiff must identify the specific job she seeks and show that she is qualified for that job. Burns v. Coca-Cola Enters., Inc., 222 F.3d 247, 258-59 (6th Cir. 2000); Kleiber, 485 F.3d at 870. An employee's claim must be dismissed if the employee fails to identify and request a reasonable accommodation. See, e.g., Tubbs v. Formica Corp., 107 Fed.Appx. 485, 488–89 (6th Cir. 2004). Even construing the evidence in plaintiff's favor for purposes of summary judgment,

plaintiff failed to request a reasonable accommodation for any alleged disability in 2011. Although she wanted to return to the high school, a full-time job was not available at the high school for teaching lower level Spanish. She was able to voluntarily retire and did so. This claim is subject to summary judgment.

### C. Plaintiff's Claim of Age Discrimination

The Age Discrimination in Employment Act ("ADEA") prohibits an employer from taking an adverse employment action against an employee "because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA "does not require an employer to accord special treatment to employees over forty years of age[, but to treat] an employee's age . . . in a neutral fashion." Spengler v. Worthington Cyclinders, 615 F.3d 481, 491 492 (6th Cir. 2010).

Plaintiff has not pointed to any direct evidence of age discrimination and provides little argument for this claim (doc. no. 38 at 16). Under the familiar burden-shifting framework of McDonnell Douglas for a prima facie case with indirect evidence, plaintiff must show that she (1) was over 40; (2) suffered an adverse action; (3) was otherwise qualified for her job; and (4) was replaced by a substantially younger employee or treated differently than similarly situated substantially younger employees. O'Connor v. Consol. Coin Cat. Corp., 517 U.S. 308, 312-313 (1996); Browning v. Dept. of Army, 436 F.3d 692, 695 (6th Cir. 2006).

It is undisputed that plaintiff (born May 28, 1951) was "over forty" in 2011. As for whether she suffered an adverse employment action, plaintiff was transferred to the Junior High to continue teaching Spanish I. She remained a full-

time tenured teacher with the same pay, benefits, and hours. "Reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions." <u>Kocsis v. Multi–Care Mgmt., Inc</u>., 97 F.3d 876, 885–86 (6th Cir. 1996). Her  duties with respect to teaching Spanish I actually changed very little – she went from teaching Spanish I to 9th graders to teaching Spanish I to 8th graders -- a difference of only one grade (doc. no. 34-1 at 70, indicating the 8th grade class would be the "equivalent of Spanish I – as it is currently taught at the 9th grade level"). She had previously taught Spanish I classes with junior high students for almost a decade.

An adverse employment action is defined as a "materially adverse change in the terms and conditions of a plaintiff's employment." <u>White v. Burlington N. & Santa Fe Ry. Co.</u>, 364 F.3d 789, 795 (6th Cir. 2004) (en banc), aff'd sub nom. <u>Burlington N. & Santa Fe Ry. Co.</u>, 548 U.S. 53 (2006). A "mere inconvenience or an alteration of job responsibilities" is not enough. <u>Id</u>. at 797. Plaintiff's transfer was not a "demotion" and did not involve a "less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." <u>White</u>, 364 F.3d at 795. Although plaintiff was unhappy about the elimination of classroom French, she acknowledges that enrollment in French classes had been declining for several years. Mariemont did not terminate her employment (Imhoff Aff., ¶ 13), and instead, allowed her to keep full time employment by transferring her to the junior high to teach Spanish. Although she indicates she "felt" demoted, a "bruised ego" is not sufficient to constitute an adverse employment action. <u>Id</u>. at

797. Mariemont correctly asserts that, based on the undisputed facts, plaintiff did not suffer any adverse employment action (doc. no. 29 at 15).

As for plaintiff's allegation that her retirement amounted to a "constructive discharge," the evidence reflects that plaintiff voluntarily retired once she reached the milestone of 35 years of service. Even before she learned in February 2009 of her transfer for the 2010/2011 school year, plaintiff had told her therapist on January 13, 2009 that she was "thinking of retiring when she reached 35 years" (¶ 2, Friedman Dep. at 119). In April 2009, the psychologist's notes of plaintiff's visit indicate that plaintiff was "brainstorming retirement ideas" (Friedman Dep. at 124). On June 30, 2009, the notes indicate that plaintiff was "2 years until retirement" (Id. at 125). On September 17, 2009, the notes indicate plaintiff "may retire soon" (Id. at 128). On December 9, 2009, the notes indicate that plaintiff "feels better about decision to leave" (Id. at 134). In an office visit on November 18, 2010, plaintiff's physician noted that plaintiff reported being "within 56 days of retirement" (doc. no. 34-2 at 57). On January 27, 2011, the psychologist noted that plaintiff was reportedly "retiring in six days" (Friedman Dep. at 148).

Plaintiff announced her retirement in March 2011 (Willard Dep. at  31, 121). She expressly indicated to her employer that she was retiring. Hammon v. DHL Airways, Inc., 165 F.3d 441, 447 (6th Cir. 1999) (an employee voluntarily resigns when she expresses an "intention to resign" and takes action "to demonstrate that she is relinquishing her position"). She retired with 35 years of retirement credit, making approximately $73,000 in yearly retirement benefits for life (Willard Dep. at 121-122, 249). When an employee voluntarily retires or resigns, she

cannot claim that she suffered an adverse employment action. See <u>Samad v. Jenkins</u>, 845 F.2d 660, 662 (6th Cir. 1988) (affirming summary judgment for employer where plaintiff voluntarily retired from teaching); <u>Keever v. City of Middletown</u>, 145 F.3d 809, 813 (6th Cir. 1998) (employee voluntarily resigned and suffered no adverse action); <u>Hammon</u>, 165 F.3d at 447 (same); <u>Lambert v. Aetna Life Ins. Co.</u>, 178 F.3d 1295, 1999 WL 232697 at *11 (6th Cir. 1999) (same); <u>Sander v. Gray TV Group, Inc.</u>, 478 Fed.Appx. 256 (6th Cir. 2012) ("If Sander quit, then he did not suffer an adverse employment action, and thus cannot prove a claim of age discrimination"). Mariemont points out that plaintiff retired *before* Imhoff made the staffing decisions for the 2011-2012 school year (Imhoff Aff., ¶ 11). Plaintiff acknowledges this (Willard Dep. at 120).

Although plaintiff tries to characterize her voluntary retirement as a "constructive discharge," she has not shown that her working conditions were "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." <u>Kocsis</u>, 97 F.3d at 886-87; see also, <u>Deleon v. Kalamazoo Cty. Rd. Com'n</u>, 2014 WL 114016, *3 (6th Cir. (Mich.)). Plaintiff has not pointed to evidence supporting *any* of the relevant factors discussed in <u>Logan v. Denny's, Inc.</u>, 259 F.3d 558, 569 (6th Cir. 2001). Plaintiff was not demoted; her salary was not reduced; she was not reassigned to "degrading" work or supervision by a younger supervisor; she was not "harassed" in any way based on her age; and she continued as a tenured language teacher with no loss of benefits. Very simply, plaintiff was not "compelled" to resign. See, e.g., <u>Adams v. Lucent Technologies, Inc.</u>, 284 Fed.Appx. 296, 302 (6th Cir. 2008) (finding no

constructive discharge). Mariemont points out that despite plaintiff's knowledge and training in the school's policies against discrimination and harassment, she never complained to anyone at Mariemont about any alleged discrimination, harassment, or purportedly threatening behavior (¶ 32, Willard Dep. at 37-38).

Plaintiff's age discrimination claim also fails because she has not pointed to any evidence that she was "replaced" by a "substantially younger" employee. When she transferred to the junior high for the 2010/2011 school year, David Price (born 1956) was hired to teach Spanish I at the high school on a *part-time* basis. After plaintiff retired as of March 31, 2011, a substitute teacher (Jennifer Mott, born 1988) temporarily covered plaintiff's classes at the junior high for the remainder of the semester (¶ 31). Price then replaced plaintiff and taught Spanish I full-time at the Junior High for the 2011-2012 school year. Plaintiff acknowledges that Price was her permanent replacement (doc. no. 38 at 16).

While a "substantially younger" individual may include an individual within the protected class, O'Connor, 517 U.S. at 313, an age difference of six years or less between an employee and a replacement is not considered significant and fails to raise an inference that the plaintiff was replaced by someone "substantially younger." Grosjean v. First Energy Corp., 349 F.3d 332, 340 (6th Cir. 2003) (collecting cases); see also, e.g., Wellman v. Wheeling and Lake Erie Ry., 1998 WL 25005, *4 (6th Cir. (Ohio)) (per curium) (holding that a 46 year old plaintiff replaced by a 41 year old failed to meet his burden of showing that his replacement was "substantially younger"). Price was not "substantially younger"

than plaintiff. Plaintiff's attempt to construe Anders as her "replacement" is not accurate. Anders later replaced Price, not plaintiff.

Plaintiff has also not pointed to any evidence suggesting that she was treated "less favorably" than substantially younger, similarly situated employees. See, e.g., <u>Sarvak v. Urban Retail Properties, LLC</u>, 524 Fed.Appx. 229 (6th Cir. 2013). Although plaintiff suggests that "someone else" could have been transferred to the junior high to teach Spanish I (doc. no. 38 at 5), the other full-time Spanish teacher (Ms. Timmerding) was born in 1955, was not "substantially younger" than plaintiff, and moreover, was an experienced teacher of upper level Spanish classes. Plaintiff has not established a prima facie case of age discrimination.

### D. Hostile Work Environment[6]

"A hostile work environment occurs when an individual's workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's working environment.'" <u>Harris v. Forklift Sys.</u>, 510 U.S. 17, 21 (1993). Plaintiff must show that the defendant's conduct was objectively severe or pervasive enough to create a work environment that any reasonable person would find hostile or abusive, and plaintiff must subjectively regard it as abusive. <u>Bowman v. Shawnee State Univ.</u>,

---

[6] Although plaintiff asserts that she brings this claim "under state and federal law" (doc. no. 38 at 16), Count Three refers *only* to federal law and fails to mention any state law (doc. no. 1 at 9-10, ¶ 49). In any event, resolution of the federal claim generally resolves the state claim. <u>Kleiber</u>, 485 F.3d at 872.

220 F.3d 456, 463-64 (6th Cir. 2000). Courts will look at all the circumstances, "including the frequency of the discriminatory conduct, its severity, whether it is physically threatening, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." Harris, 510 at 21.

Mariemont points out that plaintiff's claim is based largely on the December 18, 2009 meeting with Imhoff and Renner (doc. no. 29 at 14, citing Willard Dep. at 29). Although plaintiff claims that Imhoff "yelled" at her on this occasion (Willard Dep. at 66, 82), she acknowledges that her age and/or alleged disability were not discussed. All three participants agree that the subject of discussion was reported misinformation given by plaintiff to parents about the discontinuation of classroom French (Imhoff Aff., ¶ 5; Renner Aff., ¶ 4; Willard Dep. at 83-84). Imhoff could certainly discuss such issue with plaintiff. Plaintiff's disgruntlement at being verbally questioned about this does not establish a "hostile work environment." Plaintiff admits that Imhoff made no derogatory comments to her (Willard Dep. at 232). She continued to work for another 15 months and never reported any allegedly discriminatory or harassing conduct (Id. at 127). Mariemont asserts that "at most, Willard alleges that she was subject to a one-time offensive utterance" (doc. no. 29 at 13). Plaintiff admitted at deposition that no other action by Imhoff caused her any distress (doc. no. 47, ¶ 8, citing Willard. Dep. at 29). She admits she was not formally reprimanded (Willard. Dep. at 30, Q: You never received a reprimand from Mr. Imhoff after December 18, 2009, correct? A: Correct.).

In her response, plaintiff also points to a few emails that allegedly reflect a "hostile attitude" toward her. None of those emails reflect any disparaging remarks about age or disability. Moreover, plaintiff was not the recipient of those emails, some of which are dated after plaintiff had already retired. Timing aside, it is well-settled that "isolated incidents, unless extremely serious, are not sufficient to support a hostile work environment claim." Morris v. Oldham Cty. Fiscal Court, 201 F.3d 784, 790 (6th Cir. 2000). As the United States Supreme Court has emphasized, Title VII is not a "general civility code." Farragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Plaintiff has not shown that she was subjected to a hostile working environment based on her age or disability.

### E. Intentional Infliction of Emotional Distress

For a claim of intentional infliction of emotional distress under Ohio law, plaintiff must prove:

> (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) that the actor's actions were the proximate cause of the plaintiff's psychic injury, and (4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable man could be expected to endure it.

Burkes v. Stidham, 107 Ohio App.3d 363, 374 (1995); Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995). Plaintiff must show that the defendants engaged in "extreme and outrageous" conduct which intentionally or recklessly caused her serious emotional distress. Yeager v. Local Union, 20, 6 Ohio St.3d 369 (1983). "[L]iability

clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions and other trivialities." <u>Id</u>. at 374-75; <u>Hanly v. Riverside Methodist Hosp.</u>, 78 Ohio App.3d 73, 82 (1991) (emphasizing that the alleged conduct must be "extreme and outrageous"). "To say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement." <u>Courie v. Alcoa Wheel & Forged Prods</u>., 577 F.3d 625, 633 (6th Cir. 2009) (quoting <u>Baab v. AMR Servs. Corp</u>., 811 F.Supp. 1246, 1269 (N.D.Ohio 1993)).

To the extent plaintiff bases this claim on the December 18th meeting with Imhoff and Renner, Mariemont aptly points out that "the fact that Willard alleges her feelings were hurt by this encounter is insufficient to create" a genuine dispute of material fact (doc. no. 29 at 14). <u>Banford v. Aldrich Chem. Co., Inc</u>., 126 Ohio St.3d 210, 216 (2010) ("The emotional injury or distress must be beyond trifling mental disturbance, mere upset, or hurt feelings. . . [and] must be both severe and debilitating."). If plaintiff is also basing this claim on her alleged "constructive discharge," the Sixth Circuit Court of Appeals has explained that "an employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more." <u>Godfredson v. Hess</u>, 173 F.3d 365, 373 (6th Cir. 1999).

In her response, plaintiff devotes a single conclusory paragraph to this claim, alleging only that "evidence exists" of intentional infliction of emotional distress, but without specifying any particular evidence (doc. no. 38 at 16). Plaintiff has failed to meet her burden to point to specific facts showing a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 248 (holding that a party opposing summary

judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial."). Despite having conducted full discovery, plaintiff has not pointed to any evidence of "extreme and outrageous" conduct. See, e.g., <u>Mann v. Cinc. Enquirer</u>, 2010 WL 3328631, *5 (Ohio App. 1st Dist.) (affirming dismissal because the alleged conduct was not  "extreme and outrageous"). Summary judgment is appropriate.

## V. Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant a request for oral argument. The parties have fully briefed the relevant issues and have not requested oral argument. The Court finds that oral argument is not necessary. <u>Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs</u>, 975 F.2d 300, 301-02 (6th Cir. 1992); <u>Himes v. U.S.</u>, 645 F.3d 771, 783-84 (6th Cir. 2011) (collecting cases); <u>Schentur v. U.S.</u>, 4 F.3d 994, 1993 WL 330640 at *15 (6th Cir. (Ohio)) (observing that district courts may dispense with oral argument on motions for any number of sound judicial reasons).

Accordingly, the defendants' "Motion for Summary Judgment" (doc. no. 29) is <u>GRANTED</u>; plaintiff shall bear the costs of this action. This case is DISMISSED and TERMINATED on the docket of this Court.

IT IS SO ORDERED.

<u>     s/Herman J. Weber     </u>

Herman J. Weber, Senior Judge

United States District Court